NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————

SADIQ SARWARI, ET. AL.,

       Plaintiff,

           v.

BP PRODUCTS NORTH AMERICA INC.,

       Defendant.

———————————————————

:
:
:
:
:
:
:
:
:
:
:
:
:

Hon. Dennis M. Cavanaugh

**OPINION**

Civil Action No. 06-2976 (DMC)

<u>DENNIS M. CAVANAUGH, U.S. District Judge</u>

      This matter comes before the Court upon motion by Defendant BP Products North America Inc. ("Defendant" or "BP") to dismiss Plaintiffs Amended Complaint as moot.  No oral argument was heard pursuant to FED. R. CIV. P. 78.  After carefully considering the submissions of the parties and for the following reasons, Defendant's motion to dismiss must be **granted**.

## I.    BACKGROUND

      By letter dated June 1, 2006, BP Products of North America informed BP Commission Marketers in New Jersey that it would withdraw  the Commission Marketer channel of trade arrangement with the Plaintiff franchisees.  The Commission Marketer plan allows a retail dealer to sell gas owned by BP at a price set by BP, and provides the dealer with a set commission on each gallon of gas sold.  Plaintiffs  commenced this action on June 28, 2006, to enjoin Defendant's termination of the Commission Marketer channel of trade as a violation of the New Jersey Franchise Practices Act ("NJFPA").  By order dated September 15, 2006, this Court granted Plaintiffs' motion

for a preliminary injunction enjoining BP from withdrawing the Commission Marketer Agreements ("CM Agreements").

On October 3, 2006, BP informed Plaintiffs that it would not withdraw the Commission Marketer arrangement with Plaintiffs and that it would pay Plaintiffs' reasonable attorney's fees pursuant to N.J.S.A. § 56:10-10. However, Plaintiffs have not consented to a dismissal of the case. On November 10, 2006, Defendant filed a Motion to Dismiss Plaintiffs' Amended Complaint.

## II.   STANDARD FOR DETERMINING MOOTNESS

Defendant argues that Plaintiffs are attempting to extract financial concessions in the form of compensatory damages and a substantial modification of the financial terms of the CM Agreements which were not contemplated in the original action. BP claims that Plaintiffs will not agree to withdraw the lawsuit unless BP pays Plaintiffs one million dollars or revises the terms of the CM Agreements by raising each Plaintiff's per gallon commission. Defendant contends that only the termination provision of the CM Agreements are at issue.

Federal courts lack jurisdiction when there is no live case or controversy. See U.S. CONST. art. III, § 2, cl. 1. BP argues that this case became moot when the defendant agreed to desist from the conduct at issue. The standard for determining if a case is moot is whether "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." United States v. W.T. Grant Co., 345 U.S. 629, 632-33 (1953).

In support of its motion, BP cites Winokur v. Bell Fed. Sav. & Loan Ass'n., 560 F.2d 271, 274 (7th Cir. 1977). In Winokur, the plaintiffs brought an action against the defendant for violating SEC regulations by making false statements and omissions concerning the sale of securities. The defendant thereafter tendered the claimed damages and changed its business practices so that its

records were accurate. The plaintiffs appealed, requesting an injunction to protect them from "future injury," or the possibility that the defendant would again engage in the prohibited conduct. The Seventh Circuit held that a mere suggestion that the defendant would resume its earlier practice was too speculative to support a live controversy.

BP notes that Plaintiffs originally sought to enjoin termination of the Commission Marketer channel of trade. This Court then entered a preliminary injunction against BP. Defendant withdrew its June 1, 2006 letter announcing that it would not withdraw the Commission Marketer channel of trade in New Jersey, and also agreed to pay Plaintiffs' reasonable attorneys' fees. Therefore, BP asserts that Plaintiffs have already been provided with the relief sought and that this case is moot.

Plaintiffs argue that mere voluntary cessation of illegal conduct does not make a matter moot. See DeFunis v. Odegaard, 416 U.S. 312, 318 (1974). A defendant cannot evade justice by ending the improper conduct whenever sued. See id. at 318. "A controversy still smolders when the defendant has voluntarily, but not necessarily permanently, ceased to engage in the allegedly wrongful conduct." Hooker Chem. Co. v. EPA, 642 F.2d 48, 52 (3d Cir. 1981). Additionally, Plaintiffs contend that courts should be wary of "repentance and reform, especially when . . . there is probability of resumption." W.T. Grant Co., 345 U.S. at 632, n.5; see also Avco Corp. v. Local Union, 459 F.2d 968 (3d Cir. 1972) (noting that "[i]f misconduct occurred in the past, and the possibility of its recurrence survives, a case is not moot.").

The cessation of improper conduct moots an action only if the defendant meets a "heavy burden" to demonstrate that there is "no reasonable expectation that the wrong will be repeated." W.T. Grant Co., 345 U.S. at 633. Plaintiffs argue that BP has failed to demonstrate that the wrong will not be repeated because Defendant has only stated that it is not exercising its right to terminate

*at this time*.  BP still retains the offending provisions in the CM Agreements, Renewal CM Agreements, and Lease that allow it to terminate the franchise relationship on grounds contrary to the NJFPA.

Plaintiffs also criticize Defendant's reliance on Winokur v. Bell Federal Savings & Loan, 560 F.2d 271.  In Winokur, the Seventh Circuit stated that the key to a determination of mootness was the fact that the defendant had changed its business practices.  Unlike the defendant in Winokur, Plaintiffs argue that BP has failed to change its business practices, and therefore, there is a real and "cognizable danger" of a recurring violation of the NJFPA.

As evidence of a real and cognizable danger, Plaintiffs claim that the provisions of the CM Agreement and Lease violate N.J.S.A. § 56:10-7(f).  The NJFPA provides that it is a violation "[t]o provide any term or condition in any lease or other agreements ancillary or collateral to a franchise, which term or condition directly or indirectly violates this act." N.J.S.A. § 56:10-7(f).  For example, in Shell Oil Co. v. Marinello, 120 N.J. Super., 357, 367 (Law Div. 1972), the plaintiff oil company sued to regain possession of service station franchisees.  The franchisees sought injunctive relief to prevent the plaintiff from terminating the franchise.  The Shell court noted that N.J.S.A. § 56:10-7(f) prohibited a franchisor from "attempting to circumvent the provisions of the act by inserting 'any term or condition in any lease or other agreement ancillary or collateral to a franchise.'" Id. at 369. Also, in Westfield Ctr. Serv., Inc. v. Cities Serv. Oil Co., 158 N.J. Super. 455 (Ch. Div. 1978), the court voided a lease term that permitted a franchisor to terminate a lease on 30 days notice if the franchisor wanted to sell the property.  The court discussed N.J.S.A. § 56:10-7(f), stating that a franchisor cannot provide a term that violates the NJFPA.

Plaintiffs claim that the CM and Lease Agreements violate the NJFPA and therefore, create

4

a present claim or controversy.  Plaintiff notes that § 23(A) of the CM Agreement provides BP with a basis to terminate or not renew the CM Agreement upon 90 days notice, which includes potential decisions by BP to sell the facility for another use or to withdraw all Commission Marketer operations from the geographical area.  According to Plaintiffs' argument, this provision violates N.J.S.A. § 56:10-5, which dictates that a franchisor may only terminate or fail to renew a franchise agreement based on "good cause."  "Good cause" is defined in the statute as being limited to instances where the franchisee fails to comply with reasonable requirements of the franchise. Additionally, § 23(B) of the CM Agreement gives BP seven bases for immediate termination on written notice.  Therefore, Plaintiffs suggest that these bases violate N.J.S.A. § 56:10-5, which requires that franchisors provide 60 days written notice before terminating or cancelling, with limited exceptions.  Plaintiffs further note that § 23(E) of the Renewal CM  Agreements violates N.J.S.A. § 56:10-5 because it allows BP to refuse to repair or replace equipment owned by BP, effectively giving Defendant the ability to terminate because the useful life of its own equipment has expired.

Under FED. R. CIV. P. 15(a), "[a] party may amend the party's pleading . . . by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Plaintiffs argue that leave to amend should be granted absent "apparent or declared reason - such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ."  Gregory v. Admin. Office of the Courts of the State of N.J., 168 F. Supp. 2d 319, 325  (D.N.J. 2001).  Plaintiffs contend that none of the these factors are present here.  Plaintiffs argue that the Second Amended Complaint does not raise new causes of action, but amplifies existing NJFPA claims and takes into account recent

developments.

**III.   DISCUSSION**

Plaintiffs' problems concerning the Renewal CM Agreements, which were sent to Plaintiffs after the September 15, 2006 Order, were never a part of this lawsuit.  Although the Plaintiffs claim that the Renewal CM Agreements are in violation of the NJFPA, BP never invoked any of those provisions to terminate the Plaintiffs' franchises.  Therefore, Defendant insists that there is no present case or controversy and any hypothetical future harm fails under the doctrine of ripeness.

Plaintiffs fail to demonstrate that Renewal CM Agreements were sent to a majority of the twenty-eight Plaintiffs.  Therefore, those who did not receive a Renewal CM Agreement cannot be part of any case or controversy.  While Plaintiffs claim that the Renewal CM Agreements "set forth unreasonable standards of performance, by substantially increasing franchise costs, but not increasing compensation," the NJFPA does not provide for judicial review of the parties' economic relationship.

Plaintiffs have failed to refute BP's showing that there is no longer a case or controversy.  Plaintiffs brought the case to prevent BP from withdrawing the Commission Marketer channel of trade.  By withdrawing the June 1, 2006  letter, BP advised the Plaintiffs and the court that it would abide by the court's decision.  Although Plaintiffs claim that Defendant is trying to avoid a permanent injunction, BP is accepting this Court's decision and chooses not to appeal the preliminary injunction or litigate the issue in a full trial.

Plaintiffs assume they are entitled to a permanent injunction if they prevail in a full trial.  However, in <u>Westfield Ctr. Serv., Inc. v. Cities Serv. Oil Co.</u> 86 N.J. 453, 466-67 (1981), the New Jersey Supreme Court stated that § 10 of the NJFPA provides that a franchisee "where appropriate,

shall be entitled to injunctive relief." The Westfield Ctr. Serv. court held that although a preliminary injunction is appropriate "to maintain the status quo during litigation," "[w]here a franchisor, acting in good faith for a bona fide reason, terminates a franchise in accordance with the terms of the agreement, permanent injunctive relief would not be appropriate, even though damages under the statute would be available." Id. Therefore, BP is not seeking to avoid a permanent injunction because that remedy may not even be available to Plaintiffs if the case continued.

        The Renewal CM Agreement sent to Plaintiff Gregory Yigitkurt ("Yigitkurt") after the September 15, 2006 decision is not at issue. Although Plaintiffs focus on these Renewal CM Agreements, Defendant claims that they are part of a national program and based on a standard contract. The original suit, as filed, involved only a single termination provision which would have allowed BP to withdraw from the Commission Marketer channel of trade under § 23(A)(15) of the CM Agreement.

        While Plaintiffs point out provisions that have changed in Yigitkurt's Renewal CM Agreement, none of those provisions were implicated in this suit or subject to controversy and BP has not invoked any of those provisions. Additionally, the Amended Complaint does not refer to these provisions which were never the subject of this lawsuit and are barred by the ripeness doctrine.

        Plaintiffs' statement that the "mere existence of these clauses in the CMs and Lease constitute a violation of the NJFPA" would require courts to scrutinize contract provisions before any actual case or controversy arises. The ripeness doctrine stems from Article III's grant of jurisdiction to federal courts over "cases and controversies." See U.S. CONST. art. III, § 2, cl. 1. A federal court's jurisdiction is only invoked when a plaintiff has suffered "some threatened or actual injury resulting from the putatively illegal action . . . ." Warth v. Seldin, 422 U.S. 490, 499 (1975);

see also Armstrong World Indus., Inc. v. Adams, 961 F.2d 405, 411-12 (3d Cir. 1992) (reasoning that an action that requires the occurrence of some future event before the action's factual predicate is complete is 'contingent' and therefore premature).

Although Plaintiffs rely heavily on N.J.S.A. § 56:10-7, Plaintiffs have failed to cite any case law supporting that this is an exception to the case and controversy doctrine that allows courts to review contract provisions before those provisions are actually the subject of dispute. In each case cited by the Plaintiffs there *was* an actual case or controversy. For example, Westfield Ctr. Serv., Inc., 158 N.J. Super. 455, involved the enforceability of a termination provision when the defendant notified the plaintiff of an intent to terminate the franchise. And in Shell Oil Co., 120 N.J. Super. 357, the court considered the propriety of Shell's termination pursuant to a provision that allowed termination of a dealer on 10 days notice. In effect, the Plaintiffs are requesting the court to issue an advisory opinion on Renewal CM Agreement provisions although Plaintiffs have been unaffected by those provisions.

Plaintiffs have also failed to demonstrate that they are all impacted by BP's Renewal CM Agreements. Plaintiffs make no attempt to argue that all twenty-eight Plaintiffs are similarly situated. Defendant argues that this is because all of the Plaintiffs are *not* similarly situated, only a portion of them received Renewal CM Agreements after the September 15, 2006 order granting Plaintiffs' motion for a preliminary injunction.

BP argues that the allegations regarding the parties' economic relationship are not cognizable under the NJFPA. While the NJFPA prevents termination of a franchisee without "good cause," the statute does not guarantee economic return to a franchisee. Defendant emphasizes that this court has noted that the NJFPA does not require BP to continue the same economic relationship with the

Plaintiffs.  This statement is in keeping with <u>Freedom Truck Ctr., Inc. v. Gen. Motors Corp.</u>, 784 F. Supp. 167 (D.N.J. 1992), where the court found that a nondiscriminatory market withdrawal of a product line did not violate the NJFPA.  The court rejected the argument that any change to the terms of the franchise relationship was actionable under the NJFPA.  The court noted that such a requirement would effectively make franchisors insurers of franchisees.  If the Plaintiffs were to prevail on such a theory, any plaintiff could seek judicial review any time an economic term in a franchise agreement is altered.

After expiration of the initial CM Agreements in 2002, Plaintiffs signed four-year Renewal CM Agreements with modest rent increases. The Plaintiffs did not object or demand higher per gallon commissions or other financial concessions at that time.   Rather, BP's actions are consistent with the course of dealings between the parties going back eight years.  This reflects § 3 of the Lease Agreement that allows BP to make changes to the "rental and/or other terms" of renewal agreements and which provides that these changes shall be at BP's "sole discretion."

The Cross-Motion for Leave to File a Second Amended Complaint is also denied.  A second amended complaint would only include claims that have been rendered moot in the Amended Complaint.  The only items Plaintiffs seek to add are allegations that (1) certain provisions of the Renewal CM Agreements violate the NJFPA, and that (2) economic terms of the Renewal CM Agreements create unreasonable standards of performance.

Although Fed. R. Civ. P. 15(a) provides that leave to amend should be given "freely," a court can deny a request if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would unfairly prejudice the other party.  <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103 (3d Cir. 2002).

9

Plaintiffs' Second Amended Complaint is futile for two reasons.  First, the allegations are not ripe because Plaintiffs have sustained no injury based upon those terms.  Second, the allegations regarding the economic relationship between the parties are not cognizable under the NJFPA.

Defendant's Motion to Dismiss on the Grounds of Mootness is granted because there is no "cognizable danger of future violation" beyond mere possibility.  W.T. Grant Co., 345 U.S. at 633.  Plaintiffs initiated this suit to invalidate the June 1, 2006 letter issued by BP, which would have eliminated Plaintiffs' franchises.  This Court ordered a preliminary injunction in Plaintiffs' favor and Defendant acted in accordance with the court's order – BP withdrew the June 1, 2006 letter.  As such, there is "no reasonable expectation that the wrong will be repeated."  Id.

In the interim, however, BP issued several Renewal CM Agreements for those franchisees whose agreements had expired.  Although Plaintiffs contend that some of these new provisions are in violation of the NJFPA, BP has not acted upon them, nor is there any indication that BP will act upon them.  These new provisions were not part of the original suit, which only dealt with the termination provision that was the subject of BP's June 1, 2006 letter.

Those Plaintiffs subject to the terms of the Renewal CM Agreements had an opportunity to structure their contractual relationship with BP and cannot now seek relief from the court.  In the future, if such allegedly illegal provisions are acted upon by BP, the affected Plaintiffs may seek a remedy.  However, this court currently lacks jurisdiction over those claims under the doctrine of ripeness.

**IV.**   <u>C**ONCLUSION**</u>

For the reasons stated, it is the finding of this Court that Defendant's motion to dismiss is

**granted**.  An appropriate Order accompanies this Opinion.

                                                                 **S/ Dennis M. Cavanaugh**

                                                              Hon. Dennis M. Cavanaugh,U.S.D.J.

Date:        April  _9_ , 2007

Orig.:       Clerk
cc:          Counsel of Record
             The Honorable Mark Falk, U.S.M.J>
             File